UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA      )
              )
          v.          )        No. 08 C 2204
              )        (04 CR 965)
KENDRICK THOMAS         )
              )        Judge Gottschall

## UNITED STATES' RESPONSE TO THOMAS' MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On February 2, 2006, following a blind plea of guilty to both counts of an indictment, petitioner was convicted of: (1) on June 20, 2003, knowingly and intentionally distributing 53.6 grams of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count One); and, (2) on July 2, 2003, knowingly and intentionally distributing 115.2 grams of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count Two). Following a sentencing hearing, the district court found: (1) the substance sold by petitioner was crack cocaine, and not cocaine base or powder; and, (2) petitioner's seventeen prior convictions and overall criminal history squared with the Probation Department's determination that he belonged in Criminal History Category VI. Petitioner's Guidelines range was therefore 188-235 months, and he received a sentence at the low end of that range. *See* Judgment and Commitment Order, attached hereto as Ex. A. Petitioner appealed, and the Seventh Circuit affirmed the conviction. *See United States v. Thomas*, Case No. 06-3209, 2007 WL 1224032 (7th Cir. Apr. 25, 2007), attached hereto as Ex. B.

Thomas raises two issues in his petition for relief. First, he argues he was denied his Constitutional right to effective assistance of counsel, first because his appointed attorney did not file a petition for rehearing en banc with the Seventh Circuit or a petition for a writ of certiorari to

the Supreme Court, and second because he alleges his attorney did not argue on appeal that his

criminal history was improperly calculated.  Pet. at 6-9.  Second, Thomas argues that the Probation

Department and District Court improperly calculated his criminal history points.  Pet. at 9-10.  As

to the first issue, petitioner does not have a Constitutional right to have his court-appointed attorney

file discretionary appeals on his behalf, and his position has no merit.  As to the second issue, the

Seventh Circuit has already squarely decided the issue, so the petition should be denied.

## I.      Factual Background and Sentencing Hearing

In 2003, the Drug Enforcement Administration and the Elgin Police Department worked

together as a task force to investigate crack cocaine distribution by Gangster Disciples gang

members in Elgin, Illinois.  App. 48; S. Tr. 13.[1]  In connection with that investigation, task force

officers employed a confidential source, who purchased crack cocaine from petitioner and others.

App. 50; S. Tr. 15.

On June 26, 2003, the confidential source met with petitioner and purchased approximately

three ounces, or 53.6 grams, of crack cocaine for $1,000.  App. 25-26, 52-54; Tr. 25-26; S. Tr. 17-

19.  The sales price reflected a discount from petitioner's usual price, since the quality of the crack

was poor.  App. 54; S. Tr. 19.  While he bought crack from petitioner, the confidential source was

wearing a recording device that captured some of their conversation, including, among other things,

petitioner's statement that, "I just cooked it up, just put it in the pan to dry . . . ."  App. 55; S. Tr. 20.

---

[1]    For consistency's sake, citations in this response follow the same format as in the
government's appellate response brief.  Citations to the Original Record on appeal are designated
"R.," followed by the document number and, if applicable, the page number.  Citations to the
transcript of the change of plea hearing are to "App. __; Tr. __," with the blanks corresponding to
the relevant page numbers.  Citations to the transcript of the sentencing hearing are to "App. __; S.
Tr. __," with the blanks corresponding to the relevant page numbers.

Task Force Detective Mario Elias testified at the sentencing hearing that the confidential source told him he had seen petitioner cook crack cocaine from powder cocaine, and further, that drug dealers make crack cocaine by cooking powder cocaine with other ingredients.  App. 45-46; S. Tr. 10-11.

On July 2, 2003, the informant met petitioner again and purchased approximately five ounces, or 115.2 grams, of crack cocaine for $1,700.  App. 26, 60; Tr. 26; S. Tr. 25.  The confidential source also wore a recording device for this drug deal.  App. 60-61; S. Tr. 25-26.  The recording captured petitioner describing how he "burnt" the cocaine while he was "mixing" it.  App. 61-63; S. Tr. 26-28.  Detective Elias testified at the sentencing hearing that the confidential source told Elias that he understood from petitioner that petitioner cooked crack cocaine to sell to the source, but its quality was again poor.  App. 63-64; S. Tr. 28-29.

Detective Elias testified at the sentencing hearing that the drugs petitioner sold on June 26 and July 2, 2003, field-tested positive for cocaine, and looked like and were packaged like crack cocaine.  App. 65; S. Tr. 30.  In addition, the cocaine from both of petitioner's sales was tested by the DEA laboratory, which concluded, "the components of the specimen, cocaine and bicarbonate, are consistent with crack cocaine."  App. 69; S. Tr. 34.

Detective Elias further testified that law enforcement officers searched petitioner's residence on October 2, 2003, and found 24 additional grams of crack cocaine and some marijuana.  App. 66; S. Tr. 31.  Following the search, officers interviewed petitioner.  While he did not admit the crack cocaine from the residence belonged to him, petitioner's girlfriend said the drugs belonged to petitioner.  App. 67; S. Tr. 32.  Petitioner did, however, admit he had purchased crack cocaine before.  App. 67; S. Tr. 32.

At the sentencing hearing, the government presented evidence from DEA forensic chemist Luke Augustine, who was qualified as an expert in the field of forensic chemistry.  App. 75; S. Tr. 40.  Mr. Augustine explained that he conducted several chemical tests on the cocaine sold by petitioner on June 26 and July 2, 2003, and concluded that the controlled substances were cocaine base, not powder cocaine.  App. 82-88; S. Tr. 47-53.

## II.      District Court Findings and Sentence

The district court sentenced petitioner, a seventeen-time convict, to a low-end Guidelines sentence of 188 months in prison, based on the evidence presented at the sentencing hearing, petitioner's guilty plea and the evidence and arguments of the parties.  In choosing a sentence for petitioner, the district court thoroughly analyzed this case pursuant to the Sentencing Guidelines and Title 18, United States Code, Section 3553(a).  First, the court credited the government's evidence, and concluded the drugs petitioner sold were crack cocaine, resulting in an advisory Sentencing Guidelines range of 188 to 235 months.  App. 111; S. Tr. 76.  Noting that petitioner's offense was serious, the court found that:

> . . . crack dealing and drug dealing generally exacts enormous harms in our society.  Obviously, it imposes huge emotional and physical harms on people who are addicted to or use such drugs, and it also has substantial collateral consequences in the community as a whole and in the relevant communities where it's most prevalent.

App. 114; S. Tr. 79.  The court further noted that in Elgin, where petitioner sold the crack at issue in this case, "children had been forced off the streets by what had developed into open air drug markets," and petitioner's arrest alleviated the Elgin drug problem to some extent.  App. 114; S. Tr. 79.

4

Turning to the history and characteristics of petitioner, the court found that petitioner's 17 prior convictions were "an extraordinary amount." App. 115; S. Tr. 80. The court noted that some of the prior convictions were minor, but also found that some were more serious, namely, petitioner's convictions for aggravated battery and attempted aggravated battery. Moreover, the court found significant the fact that petitioner committed the instant crime less than two years after his release from custody for a prior conviction. App. 115; S. Tr. 80. The court specifically considered the fact that some of petitioner's prior convictions were for criminal traffic offenses, and informed the parties he had factored that into his decision to impose a low-end sentence. App. 118; S. Tr. 83. The court additionally stated:

> But that fact, that being the pattern of misdemeanors and/or criminal traffic offenses, does not in my view, with all respect, warrant further adjustment or reduction. The fact remains that Mr. Thomas has 17 criminal convictions and some of them are serious, again, the attempted aggravated battery on page 5 of the PSR and the aggravated battery conviction or convictions reflected on page 7. And some of the misdemeanors are not frivolous by any means, resisting a police officer, for example. Mr. Thomas also didn't always even get points for some of the traffic convictions, which also tends to mitigate any potential for overcounting or overemphasizing the criminal history. And again, the bottom line is there are 17 criminal convictions here, some of them are for serious offenses, and 17 is an extraordinary number any way you want to look at it.

App. 118-19; S. Tr. 83-84.

Third, the court justified a Guidelines sentence for petitioner because of the need to promote respect for the law and provide punishment for petitioner's serious offense. App. 115; S. Tr. 80. Fourth, the court ruled that a 188-month sentence should provide adequate deterrence as to petitioner as well as others who might be tempted to sell crack cocaine. App. 115; S. Tr. 80. Lastly, the court ruled that a 188-month sentence would protect the public from further crimes by petitioner, who has

committed a wide variety of offenses, and was on a trend of committing more serious crimes. App. 115-16; S. Tr. 80-81.

In sentencing petitioner, the court also addressed and rejected petitioner's arguments that a low-end Guidelines range was too harsh. First, the court rejected the argument that petitioner's current sentence was much more severe than his prior prison terms, noting that petitioner chose to break the law even after serving light prison terms in the past. App. 116-17; S. Tr. 81-82. The court further found that it "would not promote respect for the law to further exacerbate a pattern of unreasonably lenient treatment by departing from what otherwise would be a just sentence here." App. 117; S. Tr. 82. Finally, the court concluded that while it was not bound to sentence petitioner to a prison term within the Guidelines range, "the same sentence is warranted in the court's view and the court would and does find such a sentence independently appropriate when considering the full range of factors set forth by Section 3553. The 188 month sentence . . . is in the court's view fair and appropriate and reasonable on the facts presented." App. 123; S. Tr. 88.

## III.    Appellate Court Decision

Thomas filed a timely notice of appeal, and was represented by the same court-appointed counsel who represented him throughout his district court case. The sole issue on appeal was the reasonableness of petitioner's sentence, and in particular, whether his criminal history was properly calculated or somehow over-represented. Thomas conceded his criminal history points placed him in a criminal history category of VI; however, he argued the nature of his previous convictions was such that he should have received a one-level "departure." The government argued that Thomas' low-end sentence was reasonable under 18 U.S.C. § 3553(a).

The Seventh Circuit agreed with the government, affirming the 188-month sentence and stating:

> [h]ere, the district court considered Thomas's argument that his relatively modest criminal history militated for a below-range sentence, but ultimately rejected it, noting that Thomas 'has been shown leniency repeatedly and then nonetheless has chosen to break the law.' The court also described the impact of Thomas's crime on the Elgin community where, according to a task force officer who testified at sentencing, 'open air drug markets' forced children off the streets. The court cited the need to generally deter such crimes as well as the need to specifically deter Thomas as justification for the 188-month sentence; the court was required to do no more.

*See* Ex. B at 2-3.

According to the exhibits attached to petitioner's petition, on May 4, 2007, Thomas wrote to his attorney, noted that the attorney had informed him that a petition for rehearing en banc "is likely to be denied," yet asked that the attorney file such a petition anyhow. *See* Def. § 2255 Pet. at Ex. A. On May 22, 2007, Thomas again wrote to his appointed counsel. *See* Def. § 2255 Pet. at Ex. B. In this letter, Thomas stated, "I do agree with you that a en-banc petition would have been useless, but I would like for you to file a Writ of Certiorari with the U.S. Supreme Court on my behalf." *Id.* The basis for his request was that he believed the PSI erroneously calculated his criminal history points, an issue he concedes here that he and his attorney had raised both in the district court and in the Seventh Circuit. *Id.*

## IV.     Argument

### A.     Thomas Cannot Show a Constitutional Right to Effective Assistance of Counsel.

Petitioner asserts in his Section 2255 claim that he was denied his constitutional right to an effective appellate defense. Pet. at 6-10. However, it is well settled that the right to an effective appellate defense extends only to a first appeal of right, which the petitioner received. The Seventh

Circuit court heard the appeal by petitioner's court-appointed attorney and affirmed the decision and judgment of the district court. Ex. B. It was after this decision by the Seventh Circuit that petitioner sought to continue his appeal to the United States Supreme Court, and he claims here that he should have been, and is, afforded the right to counsel for this process. However, the Supreme Court has stated that it has, "a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court." *Ross v. Moffitt*, 417 U.S. 600, 617 (1974). In subsequent decisions, the Court has affirmed its position that there is no right to counsel for a defendant who seeks a review by that Court, and as such, there can be no deprivation of the effective assistance of counsel when that right simply does not exist. *See, e.g., Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). In short, petitioner is arguing here for a right that is not provided to him by the Constitution.

Supreme Court Rules state that, "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion." Sup. Ct. R. 10. The Court has held that defendants are entitled to representation by counsel when they are pursuing an appeal as of right, but this entitlement does not extend to appeals in forums of discretionary review, which a writ of certiorari clearly is. *Austin v. United States,* 513 U.S. 5, 8 (1994), *quoting Ross,* 417 U.S. at 616-17. Petitioner cites to *Wilkins v. United States*, 441 U.S. 468, 469 (1979) (Pet. at 7), to support his position that he has a right to have his counsel file a writ of certiorari. However, *Wilkins* holds that where a court-appointed attorney lied to his client and said he had filed a petition for certiorari when he had not done so, the client has a *statutory* right to obtain new counsel, re-start the discretionary appeals clock and file a writ of certiorari. *Id.* It does not hold that there is a constitutional right to such assistance whenever a defendant asks for it. Moreover, other courts have looked to the ruling in *Wilkins* and found "it does

8

not speak to whether there is a constitutional right to effective assistance of counsel in filing certiorari petitions." *Brown v. United States*, 2006 WL 3626983, at *2 (D. Minn. Dec. 12, 2006); *see also Tyra v. United States*, 2008 WL 656259 at *2 (7th Cir. Mar. 12, 2008) (unpublished).

In *Tyra*, the defendant took a position similar petitioner's claim here, claiming that failure of counsel to file a petition had a prejudicial effect on him. *Id*. at *1. The court ruled Tyra did not have a constitutional right to such action by counsel, and even if that right somehow had attached after the denial of his appeal, the defendant had failed to show a reasonable probability that his sentence would have been vacated or remanded if it had proceeded. *Id*. at *1 - 2. The court therefore denied his petition for § 2255 relief, holding, "[defendant] lacks a Sixth Amendment right to effective counsel in an appeal to the Supreme Court. The constitutional right to effective assistance of counsel is a manifestation of the Sixth Amendment right to counsel; where the latter is not present, neither is the former." *Id. See also Strickland v. Washington*, 466 U.S. 668 (1984); *Velarde v. United States*, 972 F.2d 826 (7th Cir. 1992) (declining to grant relief where petition did not establish a different result without the attorney's errors). Petitioner's constitutional claim must therefore fail, especially in light of the discretionary review standard reenforced in *Austin*. 513 U.S. at 8.

Petitioner also cites to the Criminal Justice Act ("CJA") and appears to claim that he has a statutory right to have counsel file a writ of certiorari on his behalf. Although he doesn't specifically cite to it, his claim is based on the Seventh Circuit Criminal Justice Act Plan which requires an "appointed attorney must prepare and file a petition for writ of certiorari and other necessary and appropriate documents." Seventh Circuit Plan, V.3. There are some cases in the Seventh Circuit that have acknowledged the existence of this statutory right. *See, e.g., United States v. Price*, 491 F.3d

9

613, (7th Cir. 2007) (Ripple, J., in chambers); *U.S. v. Howell*, 37 F.3d 1207 (7th Cir. 1994) (Ripple, J., in chambers), and where it has been violated, have held that petitioner is entitled to limited relief. To the extent this petitioner's claim is based in the Seventh Circuit Plan, V. 3., however, the relief he seeks should still be denied because he has not shown the failure to file a writ of certiorari prejudiced him. Indeed, in the exhibits to his petition, petitioner admitted his chances of success were slim. Pet. at Exs. A, B. Where a petitioner has no chance of success on the merits, "nothing in the Criminal Justice Act compels council to file papers in contravention of this Court's Rules against frivolous filings." *Austin*, 513 U.S. at 8.[2] In any event, the Seventh Circuit Plan and the in-chambers opinions deal only with defense counsel's statutory obligations under the CJA, and not the constitutional right to effective assistance of counsel for a certiorari petition.

### B.    Thomas Was Not Denied the Right to Effective Assistance of Counsel By Failing to Argue the Precise Objection to the PSR Sought by Thomas.

Thomas further claims he was denied effective assistance of counsel when his court-appointed attorney challenged petitioner's criminal history computation, but not in precisely the manner in which petitioner believed it should have been raised. More specifically, Thomas wanted his attorney to argue the Probation Department improperly calculated his criminal history points, and had the officer done it correctly, Thomas would have been in a category IV instead of a VI. However, the record demonstrates that the argument was in fact raised by counsel on the direct appeal. *See* Ex. B at 3 (discussing whether petitioner would prevail on appeal if his criminal history category were a IV instead of a VI, as calculated by the Probation Department). Moreover, the

---

[2]In any event, should this court find that a petition would not have been frivolous and petitioner was prejudiced by his attorney's failure to file a writ of certiorari, the remedy is not vacating the conviction, but rather it is to appoint counsel to determine whether to file, within fourteen days, a petition for rehearing or review in the Supreme Court. *Howell*, 37 F.3d at 1210.

Seventh Circuit noted that even if Thomas' Guidelines range had been a IV, the 188-month sentence imposed by the district court still would have been within the range then applicable to his criminal conduct, and well within the district court's discretion. *Thomas*, 2007 WL 1224032 at *3. In short, the Seventh Circuit considered this very issue on appeal, and rejected it.

Thomas cannot here re-litigate an issue fully decided by the court of appeals. A §2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (2007) (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992) (overruled on other grounds)). As a general rule, a petitioner may file a §2255 motion only to raise alleged errors of law that are jurisdictional or constitutional in nature or that amount to a fundamental defect that results in a complete miscarriage of justice. *Reed v. Farley*, 512 U.S. 339, 353-54 (1994). Although res judicata does not apply in §2255 proceedings, an issue decided on direct appeal should not be revisited unless there are changed circumstances of fact or law. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citing *Taylor v. United States*, 798 F.2d 271, 272-73 (7th Cir. 1986)). Simply because petitioner now tries to characterize the issue as more narrow than the overall issue (*i.e.*, whether the *Probation Department* rather than the *district court* incorrectly determined petitioner's criminal history category) does not mean petitioner raised a "new" issue in his § 2255 motion. *DeMaro v. Willingham*, 401 F.2d 105, 106 (7th Cir. 1968) ("relitigation of trial issues under different labels or on expanded allegations that could have been made in the first instance is not contemplated by section 2255.") (quoting *Frye v. United States*, 337 F.2d 385, 386 (7th Cir.1964)).

**C.     The Probation Department Properly Calculated Petitioner's Criminal History Points.**

Petitioner also asks this court to vacate his conviction because he alleges the Probation Department improperly calculated his criminal history points, in particular because it did not stop at 4 points for convictions that counted under Guideline § 4A1.1(c). Pet. at 10-11. This argument also has no merit, procedurally or substantively. As set forth in section IV(B) above, this court should not re-litigate issues already decided on direct appeal. On the first page of the Seventh Circuit's opinion, the court notes that the district court "properly calculated" the Guidelines range. Ex. B. at 1. The court further discusses the difference between a category IV and a category VI, and notes the difference depends on the criminal history points petitioner has from his 17 prior convictions. *Id.* at 2-3. Lastly, the court reviewed the district court's analysis of the criminal history computation and weighed it together with petitioner's other arguments. As set forth above, his recasting of this argument as an error by the Probation Department does not give him another bite at the apple.

Petitioner's argument also fails substantively. He has 25 prior arrests, and 17 prior convictions, the latter of which are as follows:

| | | | | |
|---|---|---|---|---|
| 5/25/91 | resisting peace officer | 1 month + 5 days | § 4A.2(c)(1) | 0 pts |
| 5/25/95 | driving unlicensed | 1 month + 5 days | § 4A1.2 | 0 pts |
| 6/28/95 | reckless conduct | 12 months supervision | § 4A1.1(c) | 1 pt |
| 10/16/95 | contributing to the delinquency of a minor | 3 months supervision | § 4A1.1(c) | 1 pt |
| 5/31/96 | attempted aggravated battery | 12 months probation, 2 days jail; 180 days on probation violation | § 4A1.1(c) | 2 pts |

12

| 8/8/96 | criminal trespass | $250 fine/costs | § 4A1.2(c)(1) | 0 pts |
|---|---|---|---|---|
| 4/2/97 | driving suspended license | 3 months supervision | § 4A1.2 | 0 pts |
| 1/31/98 | driving suspended license | 12 months conditional discharge; 24 days imprisonment; supervision revoked | § 4A1.1(c) | 1 pt |
| 6/11/97 | driving suspended license | 1 year ct supervision | § 4A1.1(c) | 1 pt |
| 6/10/98 | driving suspended license | 12 months conditional discharge, 24 days imprisonment; supervision revoked | § 4A1.1(c) | 1 pt |
| 6/22/98 | aggravated battery, criminal damage to property, resisting a peach officer | 180 days jail, 30 months probation; probation violation Resulting in 180 days | § 4A1.1(b) | 2 pts |
| 7/11/98 | driving suspended license | 12 months conditional discharge, 2 days imprisonment | § 4A1.1(c) | 1 pt |
| 7/16/98 | driving suspended license | "guilty conviction" | § 4A1.2 | 0 pts |
| 1/29/99 | driving suspended license | 12 months conditional discharge, 10 days jail; terminated unsatisfied | § 4A1.1(c) | 1 pt |
| 3/8/00 | driving suspended license | 12 months conditional discharge, 24 days jail; supervision revoked | § 4A1.1(c) | 1 pt |
| 1/16/01 | possession of cannabis | 180 days jail | § 4A1.1(b) | 2 pts |
| 9/16/01 | driving suspended license | 180 days jail | § 4A1.1(b) | 2 pts |

PSR, lines 97-170. Further, at lines 175-77 of the PSR, the Probation Department specifically noted,

"The criminal convictions above result in a subtotal criminal history score of 16. However, pursuant

13

to § 4A1.1(c), as a total of four (4) points may be counted under that subsection, the defendant's subtotal criminal history score is 12." The Probation Department then added two points because petitioner committed the instant offense less than two years after his release from custody on a prior conviction, resulting in 14 criminal history points, and a category of VI. Lines 178-82.

As the district court found, and the Seventh Circuit upheld, petitioner's criminal history is properly calculated, and he has no basis for collaterally attacking that aspect of the prior proceedings, much less for prevailing on those grounds.

## V.    Conclusion

For the reasons stated herein, petitioner's § 2255 petition should be denied on all grounds without a hearing.

Dated: June 3, 2008

<div style="margin-left:40%">

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


By: /s/ Lisa M. Noller_____
LISA M. NOLLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois  60604
(312) 353-5314

</div>

14

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electric Case Filing (ECF), that the United States' Response to Thomas' Motion to Vacate, Set Aside or Correct Sentence was served on Kendrick Thomas, pursuant to the district court's ECF system, on June 3, 2008.  A copy of the response was also mailed to Kendrick Thomas, Reg. No. 21731-424, U.S. Penitentiary, P.O. Bos 33, Terre Haute, IN, 47808.

By: s/Lisa M. Noller
LISA M. NOLLER
Assistant United States Attorney
219 S. Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 353-5314

15

# EXHIBIT A

%AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Northern _____ District of _____ Illinois

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **v.** | |
| KENDRICK THOMAS | Case Number:     04 CR 965-1 |
| | USM Number:     21731-424 |
| | ROSS M. EAGLE |
| | Defendant's Attorney |

## THE DEFENDANT:

X  pleaded guilty to count(s)    One and Two

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC 841(a)(I) | Distribution of Cocaine Base | | 1 and 2 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is   are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

AUGUST 3, 2006
Date of Imposition of Judgment

Signature of Judge

Mark Filip, U.S. District Court Judge
Name and Title of Judge

AUGUST 7, 2006
Date

AO 245B    (Rev. 12/03) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:        KENDRICK THOMAS
CASE NUMBER:      04 CR 965-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

One hundred eighty-eight months on each of Counts One and Two.  Said sentences to run concurrently.

X    The court makes the following recommendations to the Bureau of Prisons:

    Placement at a Bureau of Prisons facility that offers a comprehensive drug treatment program.

    Oxford, Wisconsin or a facility as close to Chicago as possible.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐    as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    before 2 p.m. _____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:       KENDRICK THOMAS
CASE NUMBER:     04 CR 965-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five Years.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X  The defendant shall not possess a firearm, destructive device, or any other dangerous weapon. (Check, if applicable.)

X  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 12/03) Judgment in a Criminal Case
Sheet 3B --- Supervised Release

Case 1:04-cr-00965    Document 35    Filed 08/03/2006    Page 4 of 6

Judgment—Page __4__ of __6__

DEFENDANT:      KENDRICK THOMAS
CASE NUMBER:    04 CR 965-1

## ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

The defendant shall refrain from any unlawful use of a controlled substance.

The defendant shall submit to one drug test within 15 days from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year.

The defendant shall participate in a drug aftercare treatment program which may include urine testing at the direction of the probation officer.

The defendant shall not possess a firearm or destructive device.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

AO 245B    Case 1:04-cr-00965    Document 35    Filed 08/03/2006    Page 5 of 6
(Rev. 12/03) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __5__ of __6__

DEFENDANT:          KENDRICK THOMAS
CASE NUMBER:        04 CR 965-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|            | Assessment   | Fine   | Restitution |
|------------|--------------|--------|-------------|
| **TOTALS** | $ 200.00     | $      | $           |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---------------|-------------|---------------------|------------------------|
|               |             |                     |                        |

| **TOTALS** | $ _____ | $ _____ | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the    ☐ fine   ☐ restitution.

☐  the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B  (Rev. 12/03) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __6__ of __6__

DEFENDANT:  KENDRICK THOMAS
CASE NUMBER:  04 CR 965-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  X  Lump sum payment of $ __200.00__ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,    ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

The defendant shall forfeit the defendant's interest in the following property to the United States:

# EXHIBIT B

```
  ┌─────────────────────────────────────┐
  │    NONPRECEDENTIAL DISPOSITION       │
  │    To be cited only in accordance with │
  │          Fed. R. App. P. 32.1         │
  └─────────────────────────────────────┘
```

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 17, 2007
Decided April 25, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-3209

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division |
| *v.* | No. 04 CR 965-1 |
| KENDRICK THOMAS,<br>*Defendant-Appellant.* | Mark R. Filip,<br>*Judge.* |

## O R D E R

After Kendrick Thomas pleaded guilty to possessing cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), the district court sentenced him to 188 months imprisonment, the bottom of his properly calculated guidelines range. He argues that his sentence is unreasonable because most of his prior offenses were misdemeanors and traffic violations, yet when added up they put him in criminal-history Category VI. He also contends that affording a presumption of reasonableness to a sentence within the guidelines range creates a "de facto binding guidelines regime" in contravention of *United States v. Booker*, 543 U.S. 220 (2005).

In 2003 a Drug Enforcement Administration task force investigated crack dealing by the Gangster Disciples street gang in Elgin, Illinois.  During the investigation an informant bought crack from Thomas on two occasions.  The first transaction involved 53 grams and the second, 115 grams.  Thomas was charged with two counts of possessing crack (cocaine base) with intent to distribute, 21 U.S.C. § 841(a)(1), and he pleaded guilty to both counts.  The quantity of crack triggered ten-year mandatory minimums by statute, *id.* § 841(b)(1)(A)(iii), and a total offense level of 31 under the sentencing guidelines.  U.S.S.G. §§ 2D1.1(c)(3); 3E1.1.

The district court counted 13 criminal history points, which placed Thomas in Category VI.  Thomas was convicted of reckless conduct in 1995, resisting a peace officer and contributing to the delinquency of a minor in 1996, attempted aggravated battery in 1997, criminal trespass and aggravated battery in 1999, and possession of cannabis in 2002.  He also was convicted ten times between 1995 and 2002 of driving without a license or while his license was suspended.  Thomas conceded that he was correctly classified as Category VI, but he argued that the district court should sentence him below the guidelines range because his criminal history consisted of "petty misdemeanor[s]" rather than crimes of violence or drug dealing.  The district court acknowledged that some of Thomas's convictions were for minor offenses, and offered that as a reason for selecting a sentence of 188 months, the bottom of Thomas's guidelines range.  The court declined to go lower because some of Thomas's convictions were for crimes of violence, and because the sheer number of convictions was "extraordinary."

On appeal Thomas primarily argues—somewhat anachronistically—that he is "entitled" to a one-level "departure" in his criminal history category because, in his view, placement in Category VI substantially over-represents both the seriousness of his criminal history and the likelihood that he will commit other crimes.  If a defendant is able to persuade a sentencing court of such contentions, U.S.S.G. § 4A1.3(b)(1) encourages the court to downwardly "depart" from the guidelines in imposing sentence.  But arguing whether Thomas qualifies for a downward "departure" is a needless complication after *United States v. Booker,* 543 U.S. 220 (2005).  *See United States v. Spano,* 476 F.3d 476, 480 (7th Cir. 2007) (noting obsolescence of "departures" post-*Booker*).

The real question on appeal is whether the district court considered the factors set forth in 18 U.S.C. § 3553(a) and imposed a sentence that is reasonable. *United States v. Demaree,* 459 F.3d 791, 795 (7th Cir. 2006).  Here, the district court considered Thomas's argument that his relatively modest criminal history militated for a below-range sentence but ultimately rejected it, noting that Thomas "has been shown leniency repeatedly and then nonetheless has chosen to continue to break

the law." The court also described the impact of Thomas's crime on the Elgin community where, according to a task force officer who testified at sentencing, "open-air drug markets" forced children off the streets. The court cited the need to generally deter such crimes as well as a need to specifically deter Thomas as justification for the 188-month sentence; the court was required to do no more. *See United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

Although the district court refused to sentence Thomas below his guidelines range, it cited, as we have noted, Thomas's criminal-history argument as the primary reason for selecting 188 months, the bottom of the range. Thomas is not satisfied with that concession, maintaining on appeal that his sentence is unduly severe because it is driven by his "minor offense and traffic violations." But in truth the quantity of crack Thomas dealt, not his criminal history, largely determined his sentence. Only three of Thomas's ten convictions for driving without a valid license were counted in his criminal history score. If they had been left out of the equation entirely, his criminal history score would drop to a Category IV, but his 188-month sentence would still be within the guidelines range. *Cf. United States v. Stitman*, 472 F.3d 983, 989 (7th Cir. 2007) (noting that even if defendant prevailed on argument to lower his properly calculated criminal-history category, his actual sentence would still be within the new guidelines range). Nor is Thomas's sentence unreasonable, as he urges, simply because many of his prior crimes were misdemeanors. *See United States v. Garner*, 454 F.3d 743, 751 (7th Cir. 2006) (upholding Category VI designation and sentence at high end of guidelines range although defendant's criminal past consisted solely of misdemeanors).

Thomas also asserts that the presumption of reasonableness afforded on appeal to sentences within a properly calculated guidelines range, *see, e.g., United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110-11 (7th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), "virtually reinstates the previous mandatory sentencing regime" because district courts "refuse to apply below-[g]uidelines sentences unless there are glaring extraordinary circumstances present." He argues that the presumption caused the district court to select a sentence based on "strict [g]uideline calculations without adequate consideration being given to [his] individual circumstances, history and characteristics." But as already discussed, the district court in fact explicitly considered the § 3553(a) factors and articulated point-by-point responses to each argument advanced by Thomas in favor of a lower sentence. Thomas cites to the Supreme Court's decision to grant certiorari in *United States v. Rita*, No. 05-4674, 177 F. App'x 357 (4th Cir. May 1, 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754), and *United States v. Claiborne*, 439 F.3d 479 (8th Cir. 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5618), but the citations are perfunctory; he does not explain how the potential resolution of either case might bear on his sentence.

No. 06-3209                                                           Page 4

Accordingly, the judgment of the district court is AFFIRMED.